## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAPHNE DERIS AND JESSICA DERIS, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF WARREN DERIS** | **CIVIL ACTION** |
| **VERSUS** | **NO:  12-1456** |
| **NEWELL Normand, ET AL.** | **SECTION: "S" (1)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Stay (Doc. #91) pending the completion of the appellate process in Harris v. Serpas, 745 F.3d 767 (5th Cir. 2014), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Reconsider (Doc. #88) this court's Order and Reasons of March 7, 2014, granting defendants' motion for summary judgement (Doc. #86) is **DENIED**.

### BACKGROUND

This matter is before the court on a motion to stay and a motion for reconsideration filed by plaintiffs, Daphne Deris and Jessica Deris, individually and on behalf of the estate of Warren Deris.

Plaintiffs filed this action alleging that the defendants, Jefferson Parish Sheriff Newell Normand, and Jefferson Parish Sheriff's Deputies Christopher Bassil, Jerry Petit, Christopher Cade, Shane Rivolo, and Jon-Michael Norris, violated Warren Deris' Fourth Amendment right to be free from the use of excessive force when four of the deputies shot and killed Warren Deris on July 5, 2011.  They also allege claims under Louisiana state law.  Specifically, plaintiffs allege the deputies that responded to a 911 call regarding a domestic disturbance failed to follow proper police procedures, and that the Jefferson Parish Sheriff's Department's lack of policies and training

regarding hostage and barricaded subject situations resulted in the deputies' rushed approach, which escalated the situation, and lead to the use of force and Warren Deris' death.

Defendants filed a motion for summary judgment arguing that the undisputed facts demonstrate that the deputies are entitled to qualified immunity, because under the precedent of the United States Court of Appeals for the Fifth Circuit, they did not violate Warren Deris' Fourth Amendment right to be free from the use of excessive force. Defendants also argued that plaintiffs could not maintain a claim against Sheriff Normand because the deputies did not violate Warren Deris' constitutional rights.

On March 7, 2014, the court granted the defendants' motion for summary judgment.  The court noted that "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a treat of serious harm to the officer or to others."  Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (citing Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009)).  It is a question "of 'objective reasonableness,' not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." Manis, 585 F.3d at 843 (citing Ontiveros, 564 F.3d at 382-83)  Further, the United States Court of Appeals for the Fifth Circuit has confined the inquiry "to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of the deadly force]." Rockwell v. Brown, 664 F.3d 985, 991 (5th Cir. 2011) (quoting Bazan v. Hidalgo Cnty., 246 F.3d 481, 493 (5th Cir. 2001)) (emphasis in original).

2

In this case, the court found that when looking "at the moment of the threat that resulted in the officer's use of deadly force," the use of force was objectively reasonable.  After reviewing all of the officers' statements and depositions, the statements and depositions of Daphne and Jessica Deris, and photographs of the BB gun Warren Deris had that day, the court found that under the circumstances, the officers reasonably feared for their lives at the moment they shot Warren Deris while he pointed at them with a weapon that appeared to be a black semi-automatic pistol.

Plaintiffs argue that the court should reconsider this decision because the court improperly resolved factual disputes in the deputies' favor.  They point out that Jessica Deris testified in her deposition that Warren Deris did not stick the gun out of the glass window or point it at the deputies, and the autopsy photographs show that Warren Deris held the gun to his chest when he was shot. They also argue that the court should consider the deputies' actions preceding the shooting because those actions "could be found to rise to the level of deliberate indifference."  Finally, plaintiffs argue that there are fact issues regarding Sheriff Normand's deliberate indifference as a policy maker for failing to have reasonable written procedures in place for the deputies to follow in barricaded subject or hostage situations, failing to adequately train deputies in crisis intervention, and failing to discipline deputies by having a routine independent review of officer involved shootings.

## ANALYSIS

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. <u>Bass v. U.S. Dep't of Agric.</u>, 211 F.3d 959, 962 (5th Cir. 2000).  The United States Court of Appeals for the Fifth Circuit has held nonetheless that if such a motion is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion will be treated as motion to alter or amend under Rule 59(e). <u>Hamilton Plaintiffs v. Williams Plaintiffs</u>, 147 F.3d 367, 371 n. 10 (5th

Cir. 1998); see also FED. R. CIV. PRO. 59(e).   Because plaintiffs filed the instant motion on March 17, 2014, the motion will be subject to the standards for Rule 59(e).

A Rule 59(e) motion calls into question the correctness of a judgment. In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002).  The court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration under Rule 59(e). Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990).  "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." In re Transtexas Gas Corp., 303 F.3d at 581.   "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." In re Self, 172 F. Supp. 2d 813, 816 (W.D. La. 2001).

**A.  Genuine Issues of Material Fact**

Plaintiffs argue that the court should reconsider its decision because the court improperly resolved factual disputes in the defendant deputies' favor.  They argue that Jessica Deris testified in her deposition that Warren Deris did not stick the gun out of the glass window or point it at the deputies, which contradicts the defendant deputies' statements and testimony that Warren Deris did stick the gun through the glass window and point it at them.

Jessica Deris' deposition testimony directly contradicts the statement she made the day of the event. In her statement, Jessica Deris said that Warren Deris banged the gun against the window, breaking it, and the police started shooting.  She also said that she thought that the deputies could have thought that Warren Deris was aiming at them when the glass broke.  Moreover, she said that although she told the deputies that the gun was fake, they could have thought it was real.  Jessica

4

Deris also stated that she thought her father did this to commit suicide because "he knew ya'll were gonna shoot him. And he knew he was gonna die."

Jessica Deris' statement is consistent with the defendant deputies' accounts of the incident. Her deposition testimony clearly contradicts her previous statement. A plaintiff cannot create a genuine issue of material fact by contradicting her previous statement. Marta v. S. San Antonio Indep. Sch. Dist., 7 F.3d 230 (5th Cir. 1993) ("[A] plaintiff cannot create a genuine issue of material fact with bald and conclusory statements. Neither can he manufacture a dispute simply by contradicting his prior testimony or selectively presenting the facts"). Therefore, Jessica Deris' deposition testimony does not create a genuine issue of material fact regarding whether Warren Deris stuck the gun through the glass and pointed it at the deputies.

Plaintiffs also argue that the autopsy photographs of Warren Deris show that "the trajectory of a bullet proceeding through Mr. Deris' 'gun' arm and entering his side showing the weapon would have been held up close to his chest when that shot struck him, not out pointed at anyone." The autopsy photographs may show the trajectory of the bullet, but it does not necessarily mean that the gun was not pointed at anyone or that the deputies did not reasonably believe that it was pointed at them. Warren Deris could have been in a number of positions when the bullet struck him that would have resulted in such a trajectory. The trajectory alone does not establish that the gun was not pointed at the deputies when all relevant and consistent testimony and statements concur that it was.

### B.  Considering Moments Before Shooting

Plaintiffs argue that the "court adheres too strictly to Fifth Circuit preceding holding it commands that you look only at the moment of the defendant deputies [use of force] and nothing else in all cases." Plaintiffs argue that the court should consider the "totality of the circumstances,"

and examine the events leading up to the use of force as they contend is done in the First, Third, Ninth and Tenth Circuits.

The United States Court of Appeals for the Fifth Circuit has consistently held that the qualified immunity inquiry is confined to the moment of the use of force. Rockwell, 664 F.3d at 991 (quoting Bazan, 246 F.3d at 493).  In Rockwell, 664 F.3d at 988, Scott Rockwell's mother called the police seeking help for her bipolar, schizophrenic son who had threatened her, was exhibiting suicidal behavior and had locked himself in his room.  The police arrived, talked to Scott Rockwell through he bedroom door, and then broke down the door when they decided to arrest him. Id. at 989. Scott Rockwell charged at the officers with two eight-inch knives, and the officers shot and killed him. Id. at 989-90.  The plaintiffs in that case, relying on jurisprudence from other circuits, argued that the officers were not entitled to qualified immunity because the court did not consider the impropriety of the officers' forcing entry into Scott Rockwell's bedroom in determining the reasonableness of the officers' use of deadly force. Id. at 992.  The United States Court of Appeals for the Fifth Circuit rejected this argument, stating:

> It is well-established that the excessive force inquiry is confined to whether the officer or another person was in danger at the moment of the threat that resulted in the officer's use of deadly force. At the time of the shooting, Scott was engaged in an armed struggle with the officers, and therefore each of the officers had a reasonable belief that Scott posed an imminent risk of serious harm to the officers.  We need not look at any other moment in time.
>
> Accordingly, the officers' use of deadly force was objectively reasonable.

Id. at 992-93 (quotations omitted); see also Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that there was a treat of physical harm"); Young

v. City of Killeen, 775 F.2d 1349, 1353 (5th Cir. 1985) (finding that an officer's use of deadly force was reasonable even where the arrest was "negligently executed"); Ramirez v. Knoulton, 542 F.3d 124, 129 (5th Cir. 2008) (finding that "the magistrate judge improperly criticized [Officer] Knoulton's failure to consider the use of non-lethal force or to employ a crisis negotiator").

    More recently, in Harris v. Serpas, 745 F.3d 767 (5th Cir. 2014), the United States Court of Appeals for the Fifth Circuit held to that precedent.  In that case, the decedent's ex-wife called the police because she thought he took too many sleeping pills and was going to harm himself.  Id. at 770.  The police officers entered into the decedent's locked and barricaded bedroom, where he was lying on the bed. Id.  They ordered him to put down a knife he was holding, attempted to use a taser on him and eventually shot him three times when he came at them making a stabbing motion with the knife.  Id.  The district court granted the defendants' motion for summary judgment on qualified immunity, finding that the use of force was reasonable. Id. at 771.  Plaintiffs appealed arguing that the court should examine the "totality of the circumstances." Id. at 772.  The United States Court of Appeals for the Fifth Circuit affirmed the district court stating that it "has narrowed the test, holding that 'the excessive force inquiry is confined to whether the [officer] was in danger at the moment of the treat that resulted in the [officer's] shooting.'"[1] Id. (quoting Bazan, 246 F.3d at 493).

    After reviewing Harris, there is no basis on which to find that this court should reverse its proper application of United States Court of Appeals for the Fifth Circuit's precedent regarding an officer's use of force.  The appellate court has clearly stated that the district court is to consider only

---

[1] Plaintiffs argue that this matter should be stayed while plaintiffs' counsel in Harris seeks a writ of certiorari with the Supreme Court of the United States.  Plaintiffs argue that the high court may grant the writ to resolve the circuit split regarding whether the moments before the use of force are considered in a qualified immunity inquiry, which could impact this case.  The court notes that the law is constantly in a state of flux, and declines the invitation to stay.

the moment of the use of force when evaluating a qualified immunity defense in an officer involved shooting.

### C.  Sheriff Normand's Liability

Plaintiffs argue that their claims against Sheriff Normand should be maintained because there is evidence in the record regarding Sheriff Normand's own deliberate indifference with respect to the lack of proper policies.

Plaintiffs' § 1983 claim against Sheriff Normand is governed by the Monell doctrine. See Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035 n.55 (1978)). A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official city policy.  See Monell, 98 S.Ct. at 2035-36.  A municipality or government body cannot be held vicariously liable under § 1983 for the constitutional torts of its employees or agents.  Id. at 2037.

To establish liability for a constitutional violation against the governmental bodies, the plaintiffs must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  Monell, 98 S.Ct. at 2037. Section 1983 does not permit municipal liability predicated on respondeat superior. Bd. of Comm'rs of Bryan Cnty. v. Brown, 117 S.Ct. 1382, 1388 (1997), "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001).

As explained above, plaintiffs have not shown that the deputies violated Warren Deris' Fourth Amendment right to be free from the use of excessive force because the deputies' actions

were objectively reasonable under the circumstances.  Therefore, Sheriff Normand is entitled to summary judgment on plaintiffs' § 1983 claim.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Stay (Doc. #91) pending the completion of the appellate process in <u>Harris v. Serpas</u>, 745 F.3d 767 (5th Cir. 2014) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Reconsider (Doc. #88) this court's Order and Reasons of March 7, 2014, granting defendants' motion for summary judgement (Doc. #86) is **DENIED**.

New Orleans, Louisiana, this ___22nd___ day of May, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**